IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

SYLVIA M.,[1]

        Plaintiff,

    v.

COMMISSIONER, SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civil No.: 2:17-cv-01831-JE

OPINION AND ORDER

Christopher (Kit) Morgan
Legal Aid Services of Oregon
365 SE Third Street
P.O. Box 1327
Pendleton, OR 97801

    Attorney for Plaintiff


Billy J. Williams, U.S. Attorney
Renata Gowie, Asst. U.S. Attorney
1000 S.W. 3rd Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, the same designation is used for a non-governmental party's immediate family member.

Kathryn Ann Miller
Special Asst. U.S. Attorney
Office of the General Counsel
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA 98104-7075

Attorneys for Defendants

JELDERKS, Magistrate Judge:

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) seeking judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her application for Supplemental Security Income (SSI) under the Social Security Act (the Act). Plaintiff requests that the Court reverse the Commissioner's decision and remand this action to the Social Security Administration (the Agency).

For the reasons set out below, the Commissioner's decision is reversed and remanded for further proceedings.

## Procedural Background

Plaintiff protectively filed an application for SSI benefits on March 19, 2013, alleging she had been disabled since March 1, 2009. After her claim was denied initially and upon reconsideration, Plaintiff requested an administrative hearing.

On February 2, 2016, a video hearing was held before Administrative Law Judge (ALJ) M.J. Adams. Plaintiff and Kimberly Mullinax, an impartial vocational expert (VE), testified at the hearing. Plaintiff was represented by counsel. At the hearing, Plaintiff amended her alleged onset date to March 19, 2013.

In a decision dated March 18, 2016, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

On September 11, 2017, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. In the present action, Plaintiff challenges that decision.

## Background

Plaintiff was born in 1975 and was 40 years old at the time of the ALJ's decision. She obtained a GED. Although Plaintiff has past work experience as a cashier, the ALJ determined that her earnings during the relevant time period did not reach the level of substantial gainful activity and, therefore, Plaintiff had no past relevant work. Tr. 40, 186.

## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920. Below is a summary of the five steps, which also are described in *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity (SGA). A claimant engaged in such activity is not disabled. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's case under Step Two. 20 C.F.R. § 404.1520(b).

Step Two. The Commissioner determines whether the claimant has one or more severe impairments. A claimant who does not have such an impairment is not disabled. If the claimant has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step Three. 20 C.F.R. § 404.1520(c).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the

presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1. A claimant who has such an impairment is disabled. If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

Step Four. The Commissioner determines whether the claimant is able to perform relevant work he or she has done in the past. A claimant who can perform past relevant work is not disabled. If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five. 20 C.F.R. § 404.1520(f).

Step Five. The Commissioner determines whether the claimant is able to do any other work. A claimant who cannot perform other work is disabled. If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do. The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2. If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled. If the Commissioner does not meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(g)(1).

At Steps One through Four, the burden of proof is on the claimant. *Tackett*, 180 F.3d at 1098. At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy. *Id*.

## ALJ's Decision

At Step One of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 19, 2013.

At the second step, the ALJ found that Plaintiff had the following severe impairments: obesity, status-post right rotator cuff repair, migraine, affective disorder, and post-traumatic stress disorder (PTSD).

At Step Three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

Before proceeding to the fourth step, the ALJ assessed Plaintiff's residual functional capacity (RFC). He found that Plaintiff retained the capacity to perform light work except that she could sit, stand, and/or walk for six hours in an eight-hour day with normal breaks; frequently push/pull, including operation of hand and foot controls; never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; reach front, laterally, and overhead with the right upper extremity only occasionally; perform simple, routine tasks and follow short, simple instructions; perform work that needs little to no judgment and perform simple duties that can be learned on the job in less than 30 days; could respond appropriately to supervision and co-workers but should have no contact with the general public; and could tolerate occasional changes in the work environment. Tr. 25. In making this determination, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Id.

At Step Four of the disability analysis, the ALJ found that Plaintiff had no past relevant work.

At the fifth step, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. Based upon testimony from the VE, the ALJ cited bakery worker conveyer line as representative of the work Plaintiff could perform. Having concluded that the Plaintiff could perform other work, the ALJ found that Plaintiff had not been under a disability within the meaning of the Act since March 19, 2013.

## **Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). Claimants bear the initial burden of establishing disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995), *cert. denied,* 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process. *Tackett*, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews*, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir.

1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40.

## Discussion

Plaintiff raises only one challenge to the ALJ's decision: that the ALJ erred in giving less weight to the mental health opinions provided by her treating physicians, Jonathan Betlinski, M.D., and Supriya Bhatia, M.D., than to the opinions provided by non-examining physicians.

**I. Medical Opinion Evidence**

The ALJ is required to consider all medical opinion evidence and is responsible for resolving conflicts and ambiguities in the medical testimony. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). In reviewing an ALJ's decision, the court does not assume the role of factfinder, but instead determines whether the decision is supported by substantial evidence in light of the record as a whole. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.1992). "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).

The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Id.* A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide

"specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Drs. Betlinski and Bhatia treated Plaintiff between February 7, 2013 and October 2, 2014. In a Mental Capacity Assessment dated June 20, 2013, Dr. Betlinski listed Plaintiff's diagnoses as PTSD and opioid dependence in early full remission. Tr. 687. He opined that Plaintiff had moderate limitations in her ability to complete a normal workweek or workday without interruptions from psychologically based symptoms; would likely miss two days of work in an average month; would have moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors; and would have marked limitations in her ability to travel in unfamiliar places or use public transportation due to her panic attacks. He indicated that Plaintiff's panic attacks lead to irritability and "may interrupt work schedule." Tr. 688-689.

In a Mental Capacity Assessment dated May 28, 2014, Dr. Bhatia listed Plaintiff's diagnoses as PTSD and opioid dependence. Tr. 809. She opined that Plaintiff would have moderate limitations in her ability to complete a normal workweek or workday without interruptions from psychologically based symptoms; would likely miss three days of work in an average month; would have moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors and to get along with coworkers; and would have marked limitations in her ability to travel in unfamiliar places or use public transportation due to her panic attacks. She indicated that Plaintiff's panic attacks and social anxiety "may interrupt work schedule" and that "anxiety leads to irritability." Tr. 810-811.

The ALJ gave these opinions only "some weight." He concluded that the use of the term "may" in describing the effect of Plaintiff's panic attacks on work attendance was ambiguous. He discounted Dr. Bhatia's opinion because she "did not explain how the claimant's condition

would cause her to miss work yet the claimant is able to take care of her two young children without incident" and because her opinion that Plaintiff had marked limitations in the ability to use public transportation conflicted with evidence submitted by Plaintiff's mother that Plaintiff was able to use public transportation. The ALJ also noted that Dr. Bhatia's treatment notes indicating "severe disability caused by anxiety" were inconsistent with her finding of generally only moderate limitations due to anxiety. Tr. 27. None of these rationales were either specific and legitimate or supported by substantial evidence.

First, the ALJ rejected Dr. Betlinski's and Dr. Bhatia's opinions because the doctors used the word "may" in describing the effect of Plaintiff's panic attacks on her work attendance. The ALJ stated that the use of the word "may" did "not indicate whether the claimant would actually miss work." The Commissioner cites *Morgan v. Comm'r of Soc. Sec. Admin.,* 169 F.3d 595, 601 (9th Cir. 1999) to support her assertion that the ALJ properly found that neither doctor explained how Plaintiff' symptoms precluded work activity. Def. Brief p. 7 *citing Morgan,* 169 F.3d at 601 (physician's reports should demonstrate how a claimant's symptoms translate into specific functional deficits which preclude certain activities). This contention is unpersuasive.

While the doctors' phrasing that panic attacks "may" interrupt Plaintiff's work schedule could be interpreted as equivocal, this statement was written as support of their <u>unequivocal</u> opinions that Plaintiff would likely miss two or three days of work in an average month. See Tr. 688, 810. Both doctors had the option to select "Unknown" to the question regarding absences but, instead, both chose a specific number of days that Plaintiff would likely miss work. In contrast to the medical opinion rejected in *Morgan*, which merely laid out symptoms and characteristics, Drs. Betlinski and Bhatia set out a concrete limitation that affects Plaintiff's ability to perform work-related activities on a sustained basis – a defined number of absences

from work caused by psychological symptoms. *Morgan*, 169 F.3d at 598, 600 (physician's opinion did not set out functional deficits that precluded work activity). It was, therefore, not reasonable for the ALJ to rely on this rationale to discount the doctors' opinions. As this was the only rationale the ALJ provided as to Dr. Betlinski's opinion, the ALJ failed to provide a specific and legitimate reason supported by substantial evidence for rejecting that doctor's opinion.

In discounting Dr. Bhatia's opinion, the ALJ also concluded that Dr. Bhatia failed to explain how Plaintiff's condition would cause her to miss work, yet Plaintiff was able to "take care of her two young children without incident." Tr. 27. The Commissioner argues that the ALJ reasonably gave less weight to an unexplained and unsupported medical opinion. However, as Plaintiff points out, there is nothing in the record that indicates that Plaintiff's care of her children is "without incident." The record does contain significant evidence of Plaintiff experiencing and receiving treatment for panic attacks, insomnia, anxiety and depression. Dr. Bhatia's treatment records reflect that these symptoms, at times, caused Plaintiff to feel sluggish and not do much during the day; isolate in her home, failing to attend appointments and having others go out to grocery shop for her; and not want her kids to go to school. Tr. 773, 779, 780. Dr. Bhatia's notes also reflect Plaintiff's reports that her anxiety was "rubbing off" on her kids and that she felt she was holding her kids back from experiencing things. Tr. 777. The ALJ and the Commissioner fail to point to any evidence in the record to support the ALJ's reasoning. Neither Dr. Bhatia's treatment notes nor Plaintiff's status as a parent are inconsistent with the doctor's opinion. *Smolen v. Chater,* 80 F.3d 1273, 1284 n. 7 (9th Cir. 1996)(claimant need not be completely incapacitated to receive benefits as many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication). With his cursory and unsupported conclusion, the ALJ failed to satisfy his

obligation to "set[] out a detailed and thorough summary of the facts and conflicting clinical evidence" and thus this rationale for discounting Dr. Bhatia's opinion was not supported by substantial evidence. *Garrison*, 759 F.3d at 1012.

Next, the ALJ discounted Dr. Bhatia's opinion that Plaintiff had marked limitation in the ability to travel in unfamiliar places or use public transportation because Plaintiff's mother indicated that Plaintiff could use public transportation. Tr. 27. In December 2013, Plaintiff's mother, Ms. S., completed a Third-Party Function Report. Tr. 229-236. The ALJ gave this report "some weight" to the extent it was consistent with the overall evidence. Tr. 27. In his discussion of Ms. S's lay witness statement, the ALJ specifically noted that "there are some inconsistencies between Ms. S[]'s report and the claimant's report, which limits the reliability of Ms. S[]'s report. For instance, Ms. S[] stated that the claimant uses public transportation, but the claimant said she did not." Tr. 27. The ALJ's summary of the evidence is accurate. Ms. S. checked a box on the Third-Party Function Report indicating that Plaintiff uses public transportation. In contrast, Plaintiff indicated that she did not use public transportation and testified at the hearing that she has a car for transportation. Tr. 41, 215. Discounting Dr. Bhatia's opinion based on Ms. S's check box response, which the ALJ, himself, noted was inconsistent with the overall evidence and which he used to find Ms. S's statement unreliable, was, at best, unreasonable. Furthermore, nowhere did Ms. S. address Plaintiff's ability to travel in unfamiliar places and the ALJ points to no other evidence that is inconsistent with Dr. Bhatia's opinion in this regard. Accordingly, the ALJ erred. 20 C.F.R. § 416.927; *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009).

Lastly, the ALJ found an inconsistency between Dr. Bhatia's finding that Plaintiff "had generally only moderate limitations due to her anxiety," Tr. 27 with a remark in a treatment note

dated June 12, 2014, that the ALJ quoted as "severe disability caused by anxiety." Tr. 27 citing Tr. 771. Dr. Bhatia actually wrote, "Given the severity (sic) disability caused by her anxiety she may benefit from a mood stabilizer." Tr. 771. Here, the ALJ failed to set forth his own interpretations of what he considered conflicting evidence and explain why his, rather than the doctor's interpretation, was correct. *Reddick*, 157 F.3d at 725 (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). The ALJ also failed to consider the evidence as a whole. Setting aside the fact that he misquoted and, arguably, mischaracterized Dr. Bhatia's statement, the ALJ failed to account for the fact that the treatment note was made after Dr. Bhatia completed the Mental Capacity Assessment and, in context, addresses Plaintiff's reports that her medication is not effective and her anxiety continues to interfere with sleep and daily activities. Tr. 771. An ALJ may not simply cherry-pick evidence to support his conclusions. *Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001)); Garrison, 759 F.3d at 1017 n.23.

In sum, the ALJ improperly discounted the opinions of Drs. Betlinski and Bhatia as to limitations on Plaintiff's ability to work. Because the VE testified that an employer would more than likely not tolerate one or more absences a month on an ongoing basis, the ALJ's error was not harmless. Tr. 72. Accordingly, remand is warranted.

**II. Remand**

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. 42 U.S.C. § 405(g); *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence

is insufficient to support the Commissioner's decision. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004)).

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Garrison*, 759 F.3d at 1021 (citations omitted).

I cannot conclude on this record that "further administrative proceedings would serve no useful purpose." *Garrison*, 759 F.3d at 1020. "The touchstone for an award of benefits is the existence of a disability" rather than an ALJ's error. *Brown–Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir.2015) (citations omitted). Thus, the court must assess whether outstanding issues remain *before* considering whether to credit erroneously rejected evidence as a matter of law. *Id.* Here, further proceedings are required because the record is incomplete. Although the ALJ did not provide rationales sufficient to adequately reject the medical opinions of Drs. Betlinski and Bhatia, these errors do not necessarily direct that the opinions should be credited as true. The ALJ is the proper arbiter for weighing the evidence, and here the record is mixed with regard to the objective medical evidence and the functional limitations as opined by the doctors. As there are outstanding issues that must be resolved before a determination of disability can be made, this Court does not reach the question of whether the erroneously discredited evidence should be credited as true. Accordingly, remand for further proceedings is appropriate. *Garrison*, 759 F.3d at 1020-1021.

Upon remand, the ALJ shall either credit as true the opinions of Drs. Betlinski and Bhatia or provide legally sufficient reasons for their rejection. To the extent the opinions are credited, the ALJ should reassess Plaintiff's RFC. Step Four and, if required, Step Five of the sequential evaluation analysis should be reevaluated with the assistance of a vocational expert as necessary.

**Conclusion**

For the reasons set forth above, the Commissioner's decision is REVERSED, and this action is REMANDED to the Agency for further proceedings consistent with this Opinion and Order.

DATED this 24th day of July, 2019.

                                        /s/ John Jelderks
                                  John Jelderks
                                  U.S. Magistrate Judge